# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 23-cv-61967-ALTMAN/STRAUSS

**DANIEL SULLY** and
**CYNTHIA DAUPHIN,**

     Plaintiffs,

v.

**SCOTTSDALE INSURANCE COMPANY,**

     Defendant.

_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court upon Defendant's Motion to Dismiss Plaintiffs' Complaint ("Motion"). [DE 9]. This case has been referred to me, pursuant to 28 U.S.C. § 636(b)(1) and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, to take all action as required by law on the Motion. [DE 24]. I have reviewed the Motion, the Response [DE 13] and Reply [15] thereto, and all other pertinent portions of the record. For the reasons discussed herein, I respectfully **RECOMMEND** that the Motion be **GRANTED**.

## BACKGROUND[1]

Plaintiffs, Daniel Sully and Cynthia Dauphin, obtained an insurance policy from Defendant, Scottsdale Insurance Company, which provided coverage for Plaintiffs' real property.

---

[1] For purposes of considering the Motion, the Court accepts the factual allegations in the Complaint as true and views them in the light most favorable to Plaintiffs. *See Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass'n*, 942 F.3d 1215, 1229 (11th Cir. 2019).

[DE 1–2] ¶¶ 8–9.[2]  The policy was in effect from June 12, 2019, to June 12, 2020.  *Id.* ¶ 11.  On May 26, 2020, a plumbing leak at Plaintiffs' real property caused immediate physical damage to the property.  *Id.* ¶ 14.  After contacting a water mitigation company to clean up and contain the damage, Plaintiffs then, on July 8, 2020, notified Defendant of the loss.  *Id.* ¶¶ 15–16.  Upon receiving Plaintiffs' notice, Defendant assigned them a claim number.  *Id.* ¶ 17.

Over the next six months, Plaintiffs provided Defendant all documents and information (as well as access to the property) that Defendant reasonably required to finalize its adjustment of the loss.  *Id.* ¶¶ 18–27.  Eventually, after Defendant did not inform Plaintiffs of whether they would cover their claim, Plaintiffs filed a petition for declaratory relief in Broward County.  *Id.* ¶ 28.  On February 13, 2021, Plaintiffs filed a Civil Remedy Notice of Insurer Violations ("CRN") which the Florida Department of Financial Services accepted and assigned a filing number.  *Id.* ¶¶ 35–36.  The CRN contained nine specific statutory provisions that Plaintiffs allege Defendant violated, three paragraphs of facts briefly describing the circumstance that Plaintiffs believe gave rise to Defendant's violations, and descriptions of sections or portions of the policy that Plaintiffs believed were relevant to the alleged violation.  *Id.* at 103–04.

Defendant responded to the CRN on February 23, 2021.  *Id.* ¶ 37.  In its response, Defendant first noted that section 624.155, Florida Statutes, requires specificity in CRNs and that Plaintiffs' CRN lacked such specificity as it did not set forth any policy language or facts supportive of Plaintiffs' allegations.  *Id.* at 106.[3]  Defendant then addressed individual allegations of Plaintiffs' CRN.  *Id.*  Defendant's responses denied Plaintiffs' allegations, stated it was still

---

[2] Docket Entry 1–2 contains the Complaint as well as Plaintiffs' attachments to the Complaint. For ease of reference, cites that contain paragraph symbols are referencing the Complaint, and cites to a page number are referencing one of the several attachments to the Complaint.

[3] Plaintiffs attached a copy of Defendant's response to the CRN in their Complaint.

investigating the claim, and at all times acted in good faith and honesty toward Plaintiffs.  *Id.* at 106–09.

In May 2021, Plaintiffs moved to compel appraisal.  *Id.* ¶ 39.  Two months later, on July 30, 2021, Defendant sent Plaintiffs a coverage determination letter and proceeded to issue Plaintiffs a payment of $4,350.00 for damages and agreed to issue the water mitigation company a check for $11,130.94.  *Id.* ¶ 40.  Within Defendant's coverage determination letter, Defendant acknowledged Plaintiffs' requested appraisal of the water-related damage and identified its appraiser.  *Id.* at 116.  The appraisal process commenced and at its conclusion awarded Plaintiffs $101,047.19 in actual cost value and $105,779.62 in replacement cost value.  *Id.* ¶ 41.  After accounting for the prior payments and the policy deductible, the total appraisal award was for $87,798.68.  *Id.* ¶ 42.[4]

On December 21, 2021, Plaintiffs moved to confirm the appraisal award which the trial court granted on March 8, 2022.  [DE 1–2] ¶ 43.  Plaintiffs then moved for entry of final judgment on December 5, 2022, which the trial court granted as well on April 24, 2023.  *Id.* ¶ 44.  Shortly thereafter, Plaintiffs filed the present Complaint against Defendant alleging Defendant engaged in statutory bad-faith conduct, under sections 624.155 and 626.9541, Florida Statutes, while handling their insurance claim.  Defendant in turn removed the matter to federal court and filed its Motion.

## **LEGAL STANDARD**

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief."  Fed. R. Civ. P. 8(a).  Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions"; a

---

[4] Plaintiffs' Complaint puts the tendered amount at $89,916.25.  *Id.*  However, Defendant's Motion says the amount was $87,798.68, and the copy of the check that Plaintiffs attached to their Response corresponds with the lower number as well.  [DE 9] at 4; [DE 13] at 21.  Regardless, this slight discrepancy does not affect the analysis.

"formulaic recitation of the cause of action will not do." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face." *Id.* at 555, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002)). Courts must accept the factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Cambridge Christian Sch.*, 942 F.3d at 1229; *Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1236 (11th Cir. 2019). But "[c]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1262–63 (11th Cir. 2004) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

## ANALYSIS

Defendant makes two arguments in support of its Motion. First, Defendant asserts that Plaintiffs' CRN did not strictly comply with section 624.155(3)(b), Florida Statutes, thereby failing to satisfy the conditions precedent required to pursue their bad-faith claim. Second, Defendant argues that Plaintiffs have failed to satisfy section 624.1551, Florida Statutes, which requires that

an insured establish that the property insurer breached the policy through an adverse adjudication by a court of law. Because Plaintiffs' CRN does not strictly comply with section 624.155(3)(b), Florida Statutes, Plaintiffs have not satisfied a condition precedent to bringing a bad-faith claim. Consequently, Plaintiffs' action must be dismissed, and the Court need not address Defendant's second argument.

**A. Plaintiffs' CRN**

Plaintiffs have not submitted a compliant CRN to the Florida Department of Financial Services. As a condition precedent to bringing a lawsuit under section 624.155, Florida Statutes, a plaintiff must provide the insurer with a written notice of the alleged violation at least sixty days prior to filing the lawsuit. § 624.155(3)(a), Fla. Stat. (2022). The statute dictates that the notice "shall state with specificity:"

> 1. The statutory provision, including the specific language of the statute, which the authorized insurer allegedly violated.
>
> 2. The facts and circumstances giving rise to the violation.
>
> 3. The name of any individual involved in the violation.
>
> 4. Reference to specific policy language that is relevant to the violation, if any. . . .
>
> 5. A statement that the notice is given in order to perfect the right to pursue the civil remedy authorized by this section.

§ 624.155(3)(b), Fla. Stat. A plaintiff may not bring a cause of action under this section if the insurer, within sixty days after receiving the notice, pays the alleged damages or corrects the violation. § 624.155(3)(c), Fla. Stat.

Courts must strictly construe section 624.155, Florida Statutes, because it is in derogation of the common law. *Talat Enterprises, Inc. v. Aetna Cas. & Sur. Co.*, 753 So. 2d 1278, 1283 (Fla. 2000). "[A]t the very least, a strict construction of [section 624.155, Florida Statutes,] requires

that the requisite information be stated with specificity." *Pin-Pon Corp. v. Landmark Am. Ins. Co.*, 500 F. Supp. 3d 1336, 1344 (S.D. Fla. 2020); *see also* § 624.155(3)(b), Fla. Stat.

Here, Plaintiffs listed nine specific statutory provisions that they allege Defendant violated. [DE 1–2] at 103.  However, Plaintiffs failed to "state with specificity" the "facts and circumstances giving rise to the violation" and failed to "[r]eference specific policy language that is relevant to the violation."  As to the "facts and circumstances giving rise to the violation," Plaintiffs only provided three brief paragraphs of general facts.  *Id.* at 104.  Upon close examination, Plaintiffs' facts only state that on May 26, 2020, an accidental plumbing leak caused damaged to their home, Defendant refused to acknowledge coverage, and Defendant misadjusted the insurance claim.  *Id.* Plaintiffs provided no details about where the plumbing leak occurred, what they believed caused the leak, or where within the home the damage occurred.  Moreover, Plaintiffs provided no further detail on steps Defendant took (or did not take) in adjusting the claim or any other specific facts and circumstances that suggest Defendant acted in bad faith.  *Id.*

As to their duty to "[r]eference specific policy language," Plaintiffs did not provide any policy language at all.  *Id.*  The statute's use of the phrase "specific policy *language*" clearly indicates a requirement to quote the actual words – that is, the *language* – that appear in the policy. Instead, Plaintiffs enumerated a non-exhaustive[5] list of 20 provisions – or categories of provisions – that "should be relevant" to the policy.  *Id.*  In some entries, Plaintiffs identified a section title (e.g., "the 'loss payment' section").  For others, they identified groups of provisions (e.g., "coverage A provisions").  *Id.*  Others did not appear to point to particular places or sections in the policy but rather provided a vague description, such as whatever provisions are "related to the dwelling damages," "related specifically to water damage," and "related specifically to mold

_____

[5] The CRN stated that "the policy language that should be relevant to the violations alleged *includes, but is not limited to*" the 20 entries listed.  *Id.* (emphasis added).

damage" formed a basis for the violation. *Id.*  Yet regardless of whether they were describing sections, groups of provisions, or provisions that "related to" a particular concept or duty, Plaintiffs failed to include any actual policy language. *Id.*

Defendant maintains that, due to these deficiencies, Plaintiffs have failed to provide the requisite specificity within their CRN.  In support of this contention, Defendant cites to *Julien v. United Property & Casualty Insurance Co.*, 311 So. 3d 875 (Fla. 4th DCA 2021), and *Demase v. State Farm Florida Insurance Co.*, 351 So. 3d 136 (Fla. 5th DCA 2022).  Plaintiffs argue that *Julien* and *Demase* are distinguishable.  Instead, they assert that their CRN is more similar to those found sufficient in *Gooden v. People's Trust Insurance Co.*, 336 So. 3d 331 (Fla 4th DCA 2022) and *Apex Roofing & Restoration, LLC v. State Farm Florida Insurance Co.*, 343 So. 3d 1223 (Fla. 5th DCA 2022).  While Plaintiffs are correct that their CRN is not as plainly deficient as those in *Julien* and *Demase*, it falls short in comparison to those in *Gooden* and *Apex*.

In *Julien*, the Fourth District Court of Appeal affirmed the lower court's ruling that the plaintiff's CRN was legally insufficient because it did not satisfy the specificity requirement section 624.155(3)(b), Florida Statutes, demands.  *Julien*, 311 So. 3d at 879–80.  There, the plaintiff listed "fourteen statutory provisions followed by twenty-one sections of the Florida Administrative Code" within their CRN. *Id.* at 878.  Additionally, for the specific policy language section, the plaintiff referenced the entire policy and even stated "[a]ll policy provisions." *Id.* at 878–79.

The plaintiffs' CRN in *Demase* similarly lacked specificity.  In that case, the plaintiffs alleged that the defendant violated "fifteen statutes and twenty-two administrative regulations." *Demase*, 351 So. 3d at 137.  Like the plaintiff in *Julien*, the plaintiffs in *Demase* listed "all policy provisions" within the specific policy language section. *Id.*  The Fifth District Court affirmed the

lower court's ruling that the plaintiffs' CRN was legally insufficient as it lacked specificity.  *Id.* at 139.

Here, Plaintiffs only listed nine specific statutory provisions that they allege Defendant violated.  [DE 1–2] at 103.  This is far more specific than the listed statutory and administrative violations in *Julien* and *Demase*.  And, Plaintiffs did not go so far as to reference "all policy provisions" – an answer that ultimately specifies nothing – in response to the requirement to reference "specific policy language."  Nevertheless, Plaintiffs' CRN does list over twenty section titles, groups of provisions, and types of provisions, including incorporation of "any other contract provisions that are or appear relevant based on a reasonable reading of the following explanation of the 'facts and circumstances.'"  *Id.* at 104.  This vague catch-all, while not quite incorporating every policy provision as in *Julien* and *Demase*, approaches the same problem of so generally covering so much that it turns a section that is meant to "reference specific policy language" into something that ultimately specifies nothing.  More importantly, it provided these broad vague references without citing any actual policy language, as the statute requires.

Plaintiffs' reliance on *Gooden* and *Apex* does not help them, as the CRNs in those cases were far more specific and detailed than Plaintiffs'.  In *Gooden*, the district court reversed the trial court's holding that the plaintiffs did not provide a compliant CRN.  *Gooden*, 336 So. 3d at 332.  The CRN in that case referenced only a single policy provision, which the plaintiffs quoted in its entirety.  *Id*; [DE 13] at 30–31.  In *Apex*, the district court found the plaintiff's CRN adequately specified the facts and circumstances that gave rise to the insurer's violation.  *Apex*, 343 So. 3d at 1226–27.  Apex's CRN, however, contained nearly a page of facts (in small font) detailing the insurer's alleged bad actions, including "half-cures" and "lowball offers" the insurer proposed.  *Id.*; [DE 13] at 46–48.  Indeed, a review of the *Apex* CRN attached by Plaintiffs to their Response

shows that the "facts and circumstances" section included detailed descriptions of correspondence between the parties, dates of actions taken by each party, and the cost consequences of the insurer's actions, in comparison to Plaintiffs' CRN's general assertion that Defendant "misadjusted" the claim. *See* [DE 13] at 46–48. Thus, Plaintiffs' CRN is far more akin to the CRNs in *Julien* and *Demase* rather than the CRNs in *Gooden* and *Apex*.

Plaintiffs failed to include the specific policy language and facts giving rise to Defendant's alleged violations within their CRN. As a result, Plaintiffs' CRN does not satisfy the specificity requirement of section 624.155(3)(b), Florida Statutes. With an invalid CRN, Plaintiffs have not fulfilled all conditions precedent to bringing their bad-faith claim. Accordingly, Plaintiffs' action should be dismissed with prejudice.

Dismissal with prejudice is proper in this scenario because amendment would be futile. *See, e.g.*, *In re Fundamental Long Term Care, Inc.*, 873 F.3d 1325, 1347 (11th Cir. 2017). Even if Plaintiffs were to file a compliant CRN now, they would not be able to satisfy another condition precedent for bringing suit. In May 2022, the Florida Legislature amended chapter 624 and added section 624.1551, Florida Statutes, which was subsequently amended later that year. Section 624.1551, Florida Statutes, now states:

> Notwithstanding any provision of [section] 624.155 to the contrary, in any claim for extracontractual damages under [section] 624.155(1)(b), no action shall lie until a named or omnibus insured or a named beneficiary has established through an adverse adjudication by a court of law that the property insurer breached the insurance contract and a final judgment or decree has been rendered against the insurer. Acceptance of an offer of judgment under [section] 768.79 or the payment of an appraisal award does not constitute an adverse adjudication under this section. The difference between an insurer's appraiser's final estimate and the appraisal award may be evidence of bad faith under [section] 624.155(1)(b), but is not deemed an adverse adjudication under this section and does not, on its own, give rise to a cause of action.

§ 624.1551, Fla. Stat. (2022).  One of the net effects of this new section and its ensuing amendment is that an insurer's "payment of an appraisal award does not constitute an adverse adjudication." *Id.*

In this case, Plaintiffs' only adverse adjudication is the appraisal award.  Even assuming Plaintiffs would have had a ripe bad-faith claim before section 624.1551, Florida Statutes, took effect had they filed a compliant CRN originally,[6] it is clear that re-filing their CRN now could only at best create a ripe claim that would need to comport with that statute.  Therefore, Plaintiffs are precluded from bringing forth a bad-faith claim even if they subsequently file a new compliant CRN upon dismissal.

## CONCLUSION

For the reasons discussed above, I respectfully **RECOMMEND** that the Motion [DE 9] be **GRANTED**.

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Roy K. Altman, United States District Judge.  Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except for plain error if necessary in the interests of justice.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

---

[6] The Court makes no determination as to whether section 624.1551, Florida Statutes, would have applied to Plaintiffs' claim had they filed a compliant CRN prior to the statutory amendment.

**DONE AND SUBMITTED** in Fort Lauderdale, Florida this 12th day of March 2024.

Jared M. Strauss
United States Magistrate Judge