UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-cv-61967-ALTMAN/Strauss

**DANIEL SULLY**, *et al.*,

    *Plaintiffs*,

v.

**SCOTTSDALE INSURANCE COMPANY**,

    *Defendant.*

_____/

# ORDER

Scottsdale Insurance Company ("Scottsdale"), our Defendant, has filed a Motion to Dismiss the Plaintiffs' State-Court Complaint (the "MTD") [ECF No. 9]. On January 22, 2024, we referred that Motion to U.S. Magistrate Judge Jared M. Strauss for a Report and Recommendation (the "Report"). *See* Order of Referral [ECF No. 24]. Magistrate Judge Strauss issued his Report on March 12, 2024, and recommended that we grant the Defendant's Motion to Dismiss. *See* Report [ECF No. 26] at 1. Magistrate Judge Strauss also gave the parties the following warning:

> The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable Roy K. Altman, United States District Judge. Failure to timely file objections shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except for plain error if necessary in the interests of justice.

*Id.* at 10 (first citing 28 U.S.C. § 636(b)(1); then citing *Thomas v. Arn*, 474 U.S. 140, 149 (1985); then citing *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); and then citing 11TH CIR. R. 3-1).

The Plaintiffs timely objected to the Report, *see* Plaintiffs' Objections to the Magistrate's Report ("Pls.' R&R Obj."), and Scottdale has since responded, *see* Defendant's Response to the

Objections ("Def.'s R&R Resp.") [ECF No. 28]. After careful review, we **OVERRULE** the Plaintiffs' Objections and **ADOPT** Magistrate Judge Strauss's Report in full.

## THE FACTS

Daniel Sully and Cynthia Dauphin, our Plaintiffs, purchased an "all-risk" home-insurance policy from Scottsdale that "covered the time period from June 12, 2019[,] and expired on June 12, 2020." State-Court Complaint ("Compl.") [ECF No. 1-2] ¶¶ 8–11 ("The Policy is an 'all-risk' policy that covers all losses to the Property that are not expressly excluded."). On May 26, 2020, a "plumbing leak caused sudden and immediate physical interior damage to the insured property," *id.* ¶ 14, resulting in estimated damages of over $100,000, *see id.* ¶ 41 ("[A]n appraisal award was issued to the Plaintiffs in the amount of $105,779.62 replacement cost value and $101,047.19 actual cash value." (cleaned up)). The Plaintiffs submitted their insurance claim to Scottsdale on July 8, 2020, *id.* ¶ 16, giving Scottsdale until October 8, 2020, "to adjust the claim and to provid[e] a coverage determination," *id.* ¶ 23 (citing FLA. STAT. § 627.70131(5)(a)). The Plaintiffs received no determination by that day—nor did Scottsdale respond to the eight additional update requests the Plaintiffs sent between October 23 and December 9, 2020. *Id.* ¶¶ 23–26.

Having "[grown] tired of waiting for over six months to have the Defendant tell them whether or not their claim would be covered," the Plaintiffs filed a Petition for Declaratory Relief as to their insurance claim in Florida state court on January 10, 2021 (the "Coverage Litigation"). *Id.* ¶ 28. And, on February 13, 2021, the "Plaintiffs filed a Civil Remedy Notice of Insurer Violations ('CRN')" with the Florida Department of Financial Services. *Id.* ¶¶ 35–36. Scottsdale responded to the CRN, *id.* ¶ 38, and "issued payment to the Plaintiffs in the net amount of $4,350.00 for damages and $11,130.94 to the Emergency Mitigation Company" that responded to the flood, *id.* ¶ 40. The parties then engaged in the appraisal process, and "an appraisal award was issued to the Plaintiffs in the amount of $105,779.62 replacement cost value and $101,047.19 actual cash value," *id.* ¶ 42 (cleaned up)—a sum

far greater than Scottsdale's initial payment, *see id.* ¶ 42 ("The appraisal award for actual cash value of coverage . . . is almost *two-thousand percent more* than the $4,350.00 paid by the Defendant."). "On or about November 29, 2021, [Scottsdale] issued a check to the Plaintiffs in the amount of $87,798,68[,] which represented the replacement cost value awarded at appraisal, minus the deductible and prior payments." Plaintiffs' Response to the Motion to Dismiss ("Pls.' MTD Resp.") [ECF No. 13] at 2. The Plaintiffs then "moved to confirm the appraisal award in the Coverage Litigation" and received a final judgment in that action on April 24, 2023. Compl. ¶¶ 43–44 (cleaned up).

On June 5, 2023, the Plaintiffs filed *this* action in state court, alleging that Scottsdale violated its statutory duty of good faith under FLA. STAT. §§ 624.155 and 626.9541 by "knowingly under-adjust[ing], undervalu[ing], and wrongfully delay[ing] the adjustment of Plaintiffs['] claim." *Id.* ¶ 46. Scottsdale removed the case to federal court on October 16, 2023, *see* Notice of Removal [ECF No. 1], and then promptly moved to dismiss, *see generally* MTD.

In its Motion to Dismiss, Scottsdale argued that the Plaintiffs had failed to state a claim for statutory bad faith because the Plaintiffs' CRN—through which the Plaintiffs were required to provide pre-suit notice of their claim, *see id.* at 13 ("'[T]he requirements of written notice to the Department of Insurance and the insurer are conditions precedent to bringing an action' under the bad-faith statute." (quoting *Talat Enters., Inc. v. Aetna Cas. & Sur. Co.*, 753 So. 2d 1278, 1283 (Fla. 2000)))[1]—was insufficient as a matter of law, *see id.* at 14 ("Plaintiffs' CRN fails to allege sufficient detail regarding the underlying policy or facts of the claim, rendering it invalid under Florida law.").[2] Specifically,

---

[1] *See also* FLA. STAT. § 624.155(3)(a) (2022) ("As a condition precedent to bringing an action under this section, the department and the authorized insurer must have been given 60 days' written notice of the violation.").

[2] In its Motion to Dismiss, Scottsdale also argued that the "Plaintiffs have failed to establish through an adverse adjudication that Scottsdale breached the policy of insurance," MTD at 7 (cleaned up), which is another condition precedent an insured must satisfy before he can "bring a claim under [FLA. STAT.] § 624.155," *id.* at 8. The Report didn't address this argument because its finding that the Plaintiffs' CRN was inadequate as a matter of law was sufficient to dismiss the claim. *See* Report at 5 ("Because Plaintiffs' CRN does not strictly comply with [FLA. STAT. §] 624.155(3)(b), Plaintiffs have

Scottsdale said, the CRN didn't "state with specificity" the "facts and circumstances giving rise to the violation," the "language of the statute, which the authorized insurer allegedly violated," or the "specific policy language that is relevant to the violation, if any," as they were required to do under Florida law. *Ibid.* (quoting FLA. STAT. § 624.155(3)(b)). "[B]ecause 'no action shall lie' in the face of these deficiencies," Scottsdale maintained, the "Plaintiffs' Complaint must be dismissed." *Id.* at 15 (quoting FLA. STAT. § 624.1551).

Magistrate Judge Strauss agreed. Although the Plaintiffs' CRN "listed nine specific statutory provisions that [the Plaintiffs] allege Defendant violated," Report at 6 (citing Compl. at 103), Magistrate Judge Strauss found that the CRN was nonetheless deficient because it "failed to 'state with specificity' the 'facts and circumstances giving rise to the violation' and failed to '[r]eference specific policy language that is relevant to the violation,'" *ibid.* (quoting FLA. STAT. § 624.155(3)(b)).

As to the CRN's factual description of the loss event, the Plaintiffs "only provided three brief paragraphs of general facts" and gave "no details about where the plumbing leak occurred, what they believed caused the leak, [ ] where within the home the damage occurred[,] . . . steps Defendant took (or did not take) in adjusting the claim or any other specific facts and circumstances that suggest Defendant acted in bad faith." *Ibid.* (citing Compl. at 104). And, while the CRN "enumerated a non-exhaustive list of 20 [policy] provisions–or categories of provisions–that 'should be relevant' to the [claim]," Magistrate Judge Strauss found that the Plaintiffs' "vague description" of "[policy] sections, groups of provisions, or provisions that 'related to' a particular concept or duty" fell short of FLA. STAT. § 624.155(3)(b)'s requirement that a CRN "include . . . actual policy language." *Id.* at 6–7 (citing Compl. at 104); *see also id.* at 6 ("The statute's use of the phrase 'specific policy *language'* clearly indicates a requirement to quote the actual words—that is, the *language*—that appear in the policy." (quoting

---

not satisfied a condition precedent to bringing a bad-faith claim. Consequently, Plaintiffs' action must be dismissed, and the Court need not address Defendant's second argument.").

4

FLA. STAT. § 624.155(3)(b))).

Despite these deficiencies, the Plaintiffs told Magistrate Judge Strauss that Florida courts had deemed sufficient CRNs that were "substantially similar to the CRN in the present action." Pls.' MTD Resp. at 3 (citing *Gooden v. People's Tr. Ins. Co.*, 336 So. 3d 331 (Fla. 4th DCA 2022)); *see also id.* at 5 ("As in [*Apex*], Plaintiffs' CRN specifically lists policy provisions and sections of the insurance policy which provided to the Defendant actual, fair notice of the alleged violations, pursuant to the statutory requirements, and additionally cites to specific facts and circumstances surrounding the violations of the Defendant." (citing *Apex Roofing & Restoration, LLC v. State Farm Fla. Ins. Co.* 343 So. 3d 1223, 1226 (Fla. 5th DCA 2022))). Magistrate Judge Strauss rejected this argument, distinguishing the Plaintiffs' CRN as far less "specific and detailed" than the CRNs Florida courts had approved in the cases the Plaintiffs relied on. *See* Report at 8–9 ("Plaintiffs' reliance on *Gooden* and *Apex* does not help them, as the CRNs in those cases were far more specific and detailed than Plaintiffs'.").

Since the "CRN [did] not satisfy the specificity requirement of [FLA. STAT. § 624.155(3)(b)]," Magistrate Judge Strauss concluded that the "Plaintiffs [had] not fulfilled all conditions precedent to bringing their bad-faith claim" and, therefore, had failed to state an actionable claim. *Id.* at 9. And, because the Plaintiffs hadn't brought their suit pursuant to an adverse adjudication—"another condition precedent for bringing suit," Report at 9 (citing FLA. STAT. § 624.1551 (2022) ("[P]ayment of an appraisal award does not constitute an adverse adjudication.")—Magistrate Judge Strauss recommended that we dismiss the Complaint *with* prejudice, since (in his view) any "amendment would be futile," Report at 9; *see also id.* at 10 ("Plaintiffs are precluded from bringing forth a bad-faith claim even if they subsequently file a new compliant CRN upon dismissal.").

The Plaintiffs now "object to the magistrate judge's finding that [their CRN] does not comply with [FLA. STAT. §] 624.155(3)(b)[.]" Pls.' R&R Obj. at 3 (cleaned up).

## THE LAW

When a party properly objects to a magistrate judge's report and recommendation, the district judge must make a *de novo* determination "of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* FED. R. CIV. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). To receive *de novo* review, "[p]arties filing objections to a magistrate's report and recommendation must specifically identify those findings objected to. Frivolous, conclusive, or general objections need not be considered by the district court." *United States v. Tardon*, 493 F. Supp. 3d 1188, 1209 (S.D. Fla. 2020) (Lenard, J.) (quoting *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988)). And objections are "improper" if they amount to "nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge," as the "parties are not to be afforded a 'second bite at the apple' when they file objections to a [report and recommendation]." *Melillo v. United States*, 2018 WL 4258355, at *1 (S.D. Fla. Sept. 6, 2018) (Bloom, J.) (quoting *Marlite, Inc. v. Eckenrod*, 2012 WL 3614212, at *2 (S.D. Fla. Aug. 21, 2012) (Moreno, J.)).

But, when no party has properly objected, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." FED. R. CIV. P. 72 advisory committee notes (cleaned up). Although Rule 72 itself is silent on the standard of review, the Supreme Court has acknowledged that Congress's intent was to require a *de novo* review only where objections have been properly filed—and not when neither party objects. *See Thomas*, 474 U.S. at 150 ("It does not appear that Congress intended to require district court review of a magistrate [judge]'s factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings."). In any event, the "[f]ailure to object to the magistrate [judge]'s factual findings after notice

6

precludes a later attack on these findings." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988) (cleaned up).

**ANALYSIS**

The Plaintiffs object to Magistrate Judge Strauss's findings that their CRN failed: (1) to "specify the facts and circumstances giving rise to the alleged violations," Pls.' R&R Obj. at 6; *see also* Report at 6 ("As to the 'facts and circumstances giving rise to the violation,' Plaintiffs only provided three brief paragraphs of general facts." (quoting Compl. at 103)); and (2) to "include the specific policy language giving rise to Defendant's alleged violations," Pls.' R&R Obj. at 6; *see also* Report at 6 ("As to their duty to '[r]eference specific policy language,' Plaintiffs did not provide any policy language at all." (quoting Compl. at 104)). In raising these Objections, the Plaintiffs not only recycle the same arguments they made in their Response to the Defendant's Motion to Dismiss, but they also copy and paste *the very same words* they used to advance those arguments before the magistrate judge.[3] Even the section of their Objections titled "The Specific Findings of the Magistrate Judge," *see* Pls.'

---

[3] *Compare, e.g.*, Pl.'s R&R Obj. at 6 ("Plaintiffs' CRN provides the policy number, claim number, and clearly explains their concerns about Defendant's conduct. Additionally, Plaintiffs' CRN lists the statutory provisions, including the specific language of the statutes, which Scottsdale violated, and the facts and circumstances giving rise to the violation. Thus, Plaintiffs' civil remedy notice provides specific details of the statutory violations, states with specificity all the requirements of § 624.155(3)(b) [sic], provides detailed answers in each section of the Notice form, and sufficiently placed Scottsdale on notice of the claims."), *with* Pl.'s MTD Resp. at 9 ("Plaintiffs' CRN provides the policy number, claim number, and clearly explains their concerns about Scottsdale's conduct."), *and* Pl.'s MTD Resp. at 7–8 ("Plaintiffs' CRN lists the statutory provisions, including the specific language of the statutes, which Scottsdale allegedly violated, and the facts and circumstances giving rise to the violation. Thus, despite Scottsdale's desired reading, Plaintiffs' civil remedy notice provides specific details of the statutory violations, states with specificity all the requirements of § 624.155(3)(b) [sic], provides detailed answers in each section of the Notice form, and sufficiently placed Scottsdale on notice of the claims."); *compare also* Pl.'s R&R Obj. at 6–7 ("Plaintiffs cited to specific policy language, although Plaintiffs were not required to do so. '[A]n action for bad faith is extra contractual in nature and relates to the duties of an insurer as defined by statute, not the express terms of the contract.' Citation to specific policy language is not necessary when allegations relate to the improper claims handling of an insurer." (first quoting *Townhouses of Highland Beach Condo. Ass. v. QBE Ins. Corp.*, 504 F. Supp. 2d 1307, 1310 (S.D. Fla. 2007); then citing *Tropical Paradise Resorts, LLC v. Claredon Am. Ins. Co.*, 2008 WL 3889577 (S.D. Fla. 2008); and then citing *Canales v. Am. Sec. Ins. Co.*, 2011 WL 5358753 (M.D. Fla. Nov. 7, 2011))), *with* Pl.'s MTD Resp. at 8 (same).

7

R&R Obj. at 6–7, isn't new: The Plaintiffs simply repurposed their Response's description of what "Scottsdale argue[d]" in it Motion to Dismiss, *see* Pls.' MTD Resp. at 7, as their description of what "[t]he Magistrate Judge found" in the Report.[4] Beyond that, the Objections don't engage with the Report or Magistrate Judge Strauss's reasoning at all.

In fact, there are only *three* paragraphs in the argument section of the Plaintiffs' Objections that aren't *either* an exact copy of *or* a trivial variation on the Plaintiffs' Response to the Defendant's Motion to Dismiss. *See* Pls.' R&R Obj. at 7–8. In those three paragraphs, the Plaintiffs pointed us to *Lugassy v. United Property & Casualty Insurance Co.*, 351 So. 3d 23 (Fla. 4th DCA 2022), a 2022 case in which Florida's Fourth District Court of Appeal "found that the Insureds' CRN 'sufficiently put [the defendant] on notice of the facts and circumstances giving rise to the violations[.]'" *Id.* at 7 (quoting *Lugassy*, 351 So. 3d at 26). The Plaintiffs contend that, "[s]imilar to *Lugassey* [sic] where the Insureds alleged the carrier provided 'a lowball estimate that failed to include the floors at all[,]' the Plaintiffs in this action alleged in their CRN that '[t]he insurer . . . failed to meet their obligations by grossly misadjusting the subject claim.'" *Id.* at 7–8 (first quoting *Lugassy*, 351 So. 3d at 25; and then quoting Compl. at 104).

For two reasons, we disagree that this one (supposed) similarity between the Plaintiffs' CRN and the CRN the Fourth DCA upheld in *Lugassy* has any effect on Judge Strauss's conclusion that the "Plaintiffs' CRN does not satisfy the specificity requirement of [FLA. STAT. §] 624.155(3)(b)[.]" Report at 9.

---

[4] *Compare* Pls.' R&R Obj. at 6 ("The Magistrate Judge found that Plaintiffs' civil remedy notice is deficient under §624.155, Fla. Stat. [sic] Specifically, that Plaintiffs' civil remedy notice fails to: 1) specify the facts and circumstances giving rise to the alleged violations; and 2) include the specific policy language giving rise to Defendant's alleged violations."), *with* Pls.' MTD Resp. at 7 ("Scottsdale argues Plaintiffs' civil remedy notice is deficient under §624.155, Fla. Stat. [sic] Specifically, Scottsdale argues Plaintiff's [sic] civil remedy notice fails to specify: (1) policy language relevant to the violation; (2) the statutory provisions violated; (3) the facts and circumstances giving rise to the alleged violations.").

*First*, in distinguishing the Plaintiffs' CRN from the one at issue in *Apex*, Magistrate Judge Strauss refused to equate the Plaintiffs' general allegation that Scottsdale "failed to meet their obligations by grossly mis-adjusting the subject claim," Pls.' R&R Obj. at 7 (quoting Compl. at 104), with the *Apex* Plaintiff's more-specific allegations "detailing the insurer's alleged bad actions, including 'half-cures' and 'lowball offers' the insurer proposed," Report at 8 (quoting *Apex*, 343 So. 3d at 1226–27); *see also id.* at 8–9 ("Indeed, a review of the *Apex* CRN attached by Plaintiffs to their Response shows that the 'facts and circumstances' section included detailed descriptions of correspondence between the parties, dates of actions taken by each party, and the cost consequences of the insurer's actions, in comparison to Plaintiffs' CRN's general assertion that Defendant 'misadjusted' the claim." (citing *Apex* CRN [ECF No. 13] at 46–48)).

And the Plaintiffs' comparison to the CRN at issue in *Lugassy* fares no better. The *Lugassy* CRN—unlike the "Plaintiffs' CRN's general assertion that Defendant 'misadjusted' the claim," *id.* at 9—*specifically* explained *how* the insurer had misadjusted the claim, *see Lugassy*, 351 So. 3d at 25–26 ("In relevant part, the CRN stated [the insurer] gave 'a lowball estimate that failed to include the floors at all, and otherwise under-scoped such items as drywall repairs and paint' and ignored documentation showing that additional payments were owed." (cleaned up)). Here, by contrast, the Plaintiffs' CRN reported the surrounding circumstances only in broad terms. For instance, it alleged that Scottsdale "failed to indemni[f]y the insureds for the repairs that are necessary to bring the Insured's home to its pre-loss condition," but it never identified what those necessary repairs were. Compl. at 104. Similarly, the CRN claimed that Scottsdale "acted in bad faith by failing to compensate the insured for all the damages that were covered by the policy . . . [and] by 'knowingly misapplying policy provisions that would have afforded coverage for the subject loss.'" *Ibid.* But it didn't (1) provide any "specific[ ]" description of that damage, as Florida law required, *see* FLA STAT. § 624.155(3)(b) ("The notice shall . . . state with specificity . . . [t]he facts and circumstances giving rise to the violation."); (2) identify

9

the damage "covered by the policy" that remained unremedied, Compl. at 104; or (3) explain how the insurer's application of the policy was in any way erroneous, *cf. Borrego v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 2615192, at *4 (S.D. Fla. Apr. 30, 2014) (Altonaga, J.) (recognizing as insufficient a CRN that "quoted from large portions of [FLA. STAT. §§] 624.155[,] 626.9541(1)(i) without specifying which subsections were at issue or *how the insurer violated them*" (emphasis added) (citing *Heritage Corp. of S. Fla. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 580 F. Supp. 2d 1294, 1299 (S.D. Fla. 2008) (Huck, J.))); *see also Valenti v. Unum Life Ins. Co. of Am.*, 2006 WL 1627276, at *2 (M.D. Fla. June 6, 2006) (Moody, J.) ("[W]hile Plaintiff's [CRN] states Defendant conducted an inadequate investigation, Plaintiff failed to identify specifically *what* Defendant failed to which made the investigation inadequate. This lack of specificity . . . is insufficient as the notice does not adequately identify what conduct of Defendant's must be cured[.]"). Without these necessary details, the Plaintiffs' CRN presents "little more than a guessing game with the insurer attempting to correctly guess what errors the insured claimed it made in the claims handling process[.]" *Valenti*, 2006 WL 1627276, at *2.

The *Lugassy* CRN ameliorated that risk by *explicitly* linking the insurer's (alleged) bad-faith conduct (the "lowball estimate") to the *specific* unremedied (and covered) damages (the "floors . . . drywall repairs and paint"), *Lugassy*, 351 So. 3d at 25–26—thus giving the insurer sufficient "notice of the facts and circumstances giving rise to the violations and the corrective action required to remedy the violations," *id.* at 26 (quoting *Zaleski v. State Farm Fla, Ins. Co.*, 315 So. 3d 7, 13 (Fla. 4th DCA 2021). Plus, as the Defendant notes, the *Lugassy* CRN also "provided a significantly more detailed recitation of facts, including identification of the parties involved, the adjusters assigned, evidence submitted by the insureds in support of their claim, specific actions of the insureds and the carrier, the specific cause of loss and areas of damage, and other claim-specific factual details." Def.'s R&R Resp. at 4–5 (cleaned up); *see also Lugassy*, 351 So. 3d at 24 (describing the contents of the CRN at issue in *Lugassy*).

10

Our Plaintiffs' CRN, on the other hand, was far less detailed. For one thing, despite the clear statutory requirement that the notice "state with specificity . . . [t]he *name* of *any individual involved* in the violation," FLA. STAT. § 624.155(3)(b) (emphasis added),[5] our CRN identified only an anonymous "desk adjuster assigned to file" as the "person[s] . . . representing the insurer who are most responsible for/knowledgeable of the facts giving rise to the allegations," Compl. at 102. And, while Sully and his attorney *did* appear in the CRN, Cynthia Dauphin (Sully's Co-Plaintiff) wasn't listed at all, *see ibid.*, even though she's also a beneficiary of the policy, *id.* ¶ 8 ("Scottsdale issued a valid, binding, and enforceable policy of insurance to Daniel Sully *and Cynthia Dauphin*[.]" (emphasis added)); *see also Gates v. Khokar*, 884 F.3d 1290, 1296 (11th Cir. 2018) ("When ruling on a motion to dismiss, we accept the facts alleged in the complaint as true[.]" (cleaned up)). The Plaintiffs' CRN also provided *no description* of the specific areas of the home that were damaged, *cf.* Compl. at 104 ("[A] sudden and accidental plumbing leak caused extensive damage to the Insured's home."), and "only contain[ed] two claim-specific modifications—the date of loss of May 26, 2020, and that the loss was an alleged 'plumbing leak'—to the otherwise boilerplate and generic language," MTD at 15–16 (cleaned up)); *see also Lugassy*, 351 So. 3d at 24 ("The CRN also listed *in detail* the alleged wrongful conduct and omissions by [the insurer]." (emphasis added)).

We agree that the Plaintiffs' CRN didn't need to include *every* detail the *Lugassy* CRN included. *See Valenti*, 2006 WL 1627278, at *2 ("[T]he civil remedy notice must be specific enough to provide insurers notice of the wrongdoing so the insurer can cure the same within sixty days." (citing *Lane v. Westfield Ins. Co.*, 862 So. 2d 774, 779 (Fla. 5th DCA 2003))). But our CRN's complete lack of specificity belies the Plaintiffs' contention that the *Lugassy* CRN is an appropriate comparator here. *See* Pls.' R&R Resp. at 7 ("Similar to *Lugassey*," the "CRN provided by the Plaintiffs in this action also sufficiently

---

[5] *See also Talat Enters.*, 753 So. 2d at 1283 ("Because this statute is in derogation of the common law, it must be strictly construed." (cleaned up)).

11

put the Defendant on notice as to the specific facts and circumstances surround the violations[.]"). As with *Gooden* and *Apex*, therefore, *see* Report at 8 ("Plaintiffs' reliance on *Gooden* and *Apex* does not help them, as the CRNs in those cases were far more specific and detailed than Plaintiffs.'" (first citing *Gooden*, 336 So. 3d at 332; and then citing *Apex*, 343 So. 3d at 1226–27)), *Lugassy* doesn't save the Plaintiffs' claim here because the *Lugassy* CRN gave a much more "detailed recitation of the facts surrounding the violation," *Lugassy*, 351 So. 3d at 25, than the Plaintiffs' CRN did.

*Second*, even if we agreed with the Plaintiffs that, under *Lugassy*, their CRN "sufficiently put the Defendant on notice as to the specific facts and circumstances surround[ing] the violations," Pls.' R&R Obj. at 7, that's only *one* of the necessary conditions Florida law imposes on CRNs, *see* FLA. STAT. § 624.155 (listing the requirements for adequate notice). And the Plaintiffs *never* explain how *Lugassy* supports their position that they adequately "cited to specific policy language" in their CRN. Pls.' R&R Obj. at 6. Instead, the Plaintiffs simply copy and paste what they said on this issue in their Response to the Defendant's Motion to Dismiss—arguments Magistrate Judge Strauss has already reviewed and rejected. *See* Report at 8 ("Plaintiffs' CRN . . . approaches the same problem of so generally covering so much that it turns a section that is meant to 'reference specific policy language' into something that ultimately specifies nothing. More importantly, it provided these broad vague references without citing any actual policy language, as the statute requires." (cleaned up)). Since this "objection" is "nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge," *Marlite*, 2012 WL 3614212, at *2, we needn't give the Plaintiffs a "'second bite at the apple' . . . [to relitigate] arguments and authorities [that] have already been briefed and adjudicated," *Perez v. Kijakzi*, 2024 WL 136774, at *2 (S.D. Fla. Jan. 12, 2024) (Bloom, J.) (quoting *Marlite*, 2012 WL 3614212, at *2).

Regardless, even on *de novo* review, we find that the Plaintiffs' CRN didn't comply with FLA. STAT. § 624.155(3)(b)'s requirement that a CRN make "[r]eference to specific policy language that is

relevant to the violation, if any." After all, since the Plaintiffs' CRN listed several policy *sections* the Plaintiffs believe "should be relevant" to their claim, *see* Compl. at 104,[6] we'd be hard-pressed to find that there's "no relevant policy language applicable to this case," *Wopshall v. Travelers Home & Marine Ins. Co.*, 2021 WL 1247501, at *7 (S.D. Fla. Mar. 29, 2021) (Maynard, Mag. J.); *see also Tropical Paradise Resorts, LLC v. Clarendon Am. Ins. Co.*, 2008 WL 3889577, at *4 (S.D. Fla. Aug. 20, 2008) (Cooke, J.) ("The clear language of the statute attests to the possibility that it may be impossible to reference any specific, relevant language from the policy agreement."). At no point, however, did the CRN reference any of the policy *language—viz.*, the "specific words . . . in a law or regulation," *Language*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/language (last visited Apr. 25, 2024)—in those sections that bear on the alleged violations, *see* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 69 (2012) ("Words are to be understood in their ordinary, everyday meanings[.]"); *see also Julien v. United Prop. & Cas. Ins. Co.*, 311 So. 3d 875, 879 (Fla. 4th DCA 2021) ("[T]he insureds' listing of whole sections of the insurance policy 'appear[ed] to lack specificity.'" (quoting *Fox v. Starr Indem. & Liab. Co.*, 2017 WL 1541294, at *2 (M.D. Fla. Apr. 28, 2017) (Merryday, J.))). Since the Plaintiffs' CRN failed to adequately reference "specific policy language," FLA. STAT. § 624.155(3)(b),[7] the Plaintiffs haven't satisfied FLA. STAT. § 624.155(3)(b)'s "requirements of written notice to the Department of Insurance and the

---

[6] The Report explains how the Plaintiffs' CRN attempted to present this information:

> Plaintiffs enumerated a non-exhaustive list of 20 provisions—or categories of provisions—that "should be relevant" to the policy. In some entries, Plaintiffs identified a section title (e.g., "the 'loss payment' section"). For others, they identified groups of provisions (e.g., "coverage A provisions"). Others did not appear to point to particular places or sections in the policy but rather provided a vague description, such as whatever provisions are "related to the dwelling damages," "related specifically to water damage," and "related specifically to mold damage[.]"

Report at 6–7 (citing Compl. at 104) (cleaned up)).

[7] *See also Julien*, 311 So. 3d at 878 ("Because the statute is in derogation of the common law, we strictly construe the statutory requirements." (citing *Talat Enters.*, 753 So. 2d at 1283)).

13

insurer[, which] are conditions precedent to bringing an action" against an insurer for bad faith, *Talat Enters.*, 753 So. 2d at 1283. That alone is fatal to their claim.

To the extent the Plaintiffs draw from *Lugassy* "a new argument . . . not previously presented to the Magistrate Judge," we've "considered [the] Plaintiff[s'] newly-raised argument and find[ ] it is without merit." *Car Body Lab, Inc. v. Lithia Motors, Inc.*, 2021 WL 3404040, at *1 (S.D. Fla. Aug. 4, 2021) (Moreno, J.). As to the cases the Plaintiffs already submitted to the Magistrate Judge, we find no clear error in the Report's conclusion that the "Plaintiffs' reliance on *Gooden* and *Apex* does not help them, as the CRNs in those cases were far more specific and detailed than Plaintiffs'." Report at 8; *see also Prather v. NCL (Bah.) Ltd.*, 2020 WL 4381412, at *2 (S.D. Fla. July 31, 2020) (Moreno, J.) ("[O]bjections that are conclusory, general, or simply rehash or reiterate the original briefs to the magistrate judge are 'not entitled to de novo review.'" (quoting *Marlite*, 2012 WL 3614212, at *2)). Unlike the Plaintiffs' CRN, after all, the *Gooden* CRN *quoted* a "policy provision . . . in its entirety," Report at 8 (citing *Gooden*, 336 So. 3d at 332), and the *Apex* CRN directly tied the insurer's bad-faith conduct to specific damages claims, *see Apex*, 343 So. 3d at 1227 ("Apex's CRN related that State Farm had, among other things, suggested numerous 'half-cures' to resolving the damage claim, including pricing for labor and materials that was inconsistent with marketplace pricing[.]"). We, therefore, cannot say that it was clear error for Magistrate Judge Strauss to find that the Plaintiffs' CRN fell "short in comparison to those in *Gooden* and *Apex*," Report at 7, since it "failed to include the specific policy language and facts giving rise to Defendant's alleged violations within their CRN," *id.* at 9.

***

One last thing: The Plaintiffs do not object to Magistrate Judge Strauss's conclusion that their Complaint should be dismissed *with* (rather than *without*) prejudice. *See id.* at 9 ("Dismissal with prejudice is proper in this scenario because amendment would be futile." (citing *In re Fundamental Long Term Care, Inc.*, 873 F.3d 1325, 1347 (11th Cir. 2017)); *see generally* Pls.' R&R Obj. (not objecting to this

14

finding). And we can find no clear error in that decision. *See* FED R. CIV. P. 72 advisory committee notes ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." (cleaned up)).

As Magistrate Judge Strauss correctly noted, the Plaintiffs never brought a breach-of-contract claim against the insurer and thus never obtained a final judgment establishing that the insurer breached the terms of the parties' contract. *See* Report at 10 ("In this case, Plaintiffs' only adverse adjudication is the appraisal award."). And a final judgment in a breach-of-contract action *does* appear to be a condition precedent to a bad-faith action under Florida law. *See* FLA. STAT. § 624.1551 ("[N]o action shall lie until [the insured] has established through an adverse adjudication by a court of law that the property insurer breached the insurance contract *and* a final judgment or decree has been rendered against the insurer. Acceptance of an offer of judgment . . . or the payment of an appraisal award does not constitute an adverse adjudication[.]"). The Plaintiffs did (it's true) receive a judgment confirming their appraisal award in their declaratory-relief action. *See* Compl. ¶ 43–44 ("[T]he Plaintiffs moved to confirm the appraisal award in the Coverage Litigation . . . [and] Final Judgment . . . was entered by the Court on April 24, 2023." (cleaned up)). But that doesn't count as an "adverse adjudication" in a *breach-of-contract* action. *See* FLA. STAT. § 624.1551; *see also Hill v. State Farm Fla. Ins. Co.*, 35 So. 3d 956, 961 (Fla. 2d DCA 2010) ("The appraisal process . . . is not legal work arising from an insurance company's denial of coverage or breach of contract[.]"). And, in fact, the judgment the Plaintiffs obtained isn't necessary to the appraisal process at all. *See, e.g.*, *Federated Nat. Ins. Co. v. Esposito*, 937 So. 2d 199, 200-01 (Fla. 4th DCA 2006) ("Because of the laudable goal of the appraisal process—to resolve disputes without litigation—and the potential to evade that goal by resort to the court system, we hold that there is no need to confirm an appraisal award in circumstances such as those presented here."); *State Farm Fla. Ins. Co. v. Gonzalez*, 76 So. 3d 34, 37 (Fla. 3d DCA 2011) ("There is no rule or statute allowing for the filing of a petition to confirm an appraisal award.").

Nor *could* the Plaintiffs bring such a breach-of-contract claim now because the insurer has already paid the full amount of the appraisal award, *see* Pls.' MTD Resp. at 2 ("On or about November 29, 2021, Defendant issued a check to the Plaintiffs in the amount of $87,798,68 which represented the replacement cost value awarded at appraisal, minus the deductible and prior payments[.]"), leaving the Plaintiffs with no damages, *see Chateaubleau Villas Condo Assoc., Inc. v. Mt. Hawley Ins.*, 2010 WL 4923116, at *3 (S.D. Fla. July 7, 2010) (O'Sullivan, Mag. J.) ("[T]he motion to confirm the appraisal award has been rendered moot by [the insurer's] timely payment of the appraisal award."), *report and recommendation adopted*, 2010 WL 4923112 (S.D. Fla. Nov. 29, 2010) (Seitz, J.). And damages are an element of any breach-of-contract claim under Florida law. *See, e.g., Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 953 (Fla. 3d DCA 2017) ("To prevail in a breach of contract action, a plaintiff must prove: (1) a valid contract existed; (2) a material breach of the contract; and (3) damages." (citing *Murciano v. Garcia*, 958 So. 2d 423 (Fla. 3d DCA 2007))). Any such claim would also be barred under Florida's preclusion law because the Plaintiffs cannot now relitigate their appraisal award. *See Magaldi v. Safeco Ins. Co. of Am.*, 2010 WL 2542011, at *4 (S.D. Fla. June 22, 2010) (Hurley, J.) ("[P]rinciples of res judicata prevent either party from now revisiting the validity of the appraisers' award, as well as the final computations or underlying methodologies of the appraisers." (first citing *Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*, 483 F.3d 1265 (11th Cir. 2007); and then citing *Wailua Assocs. v. Aetna Cas. & Sur. Co.*, 27 F. Supp. 2d 1211 (D. Hawaii))); *see also Newman v. Am. Home Assurance Co.*, 2024 WL 1209801, at *16 (S.D. Fla. Mar. 24, 2024) (Becerra, J.) ("By their very nature, however, these additional [damages, which the plaintiffs incurred but which were not awarded in the appraisal,] are part of the costs that the [plaintiffs] requested (or should have requested) as part of the [ ] appraisal. Plaintiffs cannot . . . recover damages that were within the scope of the [ ] appraisal but not awarded." (first citing *Kaplan v. Nautilus Ins. Co.*, 861 F. App'x 798, 803 (11th Cir. 2021); and then citing *Magaldi*, 2010 WL 2542011, at *5)); *Dadeland Depot, Inc. v. St. Paul Fire & Marine Ins. Co.*, 945 So. 2d 1216, 1235

16

(Fla. 2006) ("Several courts have appropriately concluded that a determination made during an arbitration proceeding can provide an appropriate foundation for the application of collateral estoppel." (cleaned up)); *cf. Trafalgar at Greenacres, Ltd. v. Zurich Am. Ins. Co.*, 100 So. 3d 1155, 1158 (Fla. 4th DCA 2012) ("We see no meaningful distinction between an arbitration award and the appraisal award in this case for the purpose of deciding whether the underlying action was resolved favorably to the insured."); *Almeria Park Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, 2019 WL 1959200, at *3 (S.D. Fla. Jan. 16, 2019) (Altonaga, J.) ("In Florida, appraisal clauses in insurance policies have generally been treated as arbitration provisions." (quoting *Bullard Bldg. Condo. Ass'n, Inc. v. Travelers Prop. Cas. Co. of Am.*, 2006 WL 2787850, at *1 (M.D. Fla. Sept. 26, 2006) (Whittemore, J.))).

We therefore find no clear error in Magistrate Judge Strauss's conclusion that the Plaintiffs' Complaint should be dismissed *with prejudice*.

\* \* \*

After careful review, then, we hereby **ORDER and ADJUDGE** as follows:

1. The Report and Recommendation [ECF No. 26] is **ACCEPTED and ADOPTED** in full.

2. The Defendant's Motion to Dismiss [ECF No. 9] is **GRANTED**. The Plaintiffs' Complaint [ECF No. 1-2] is **DISMISSED** *with prejudice*.

3. This case shall remain **CLOSED**. All deadlines and hearings are **TERMINATED**, and any pending motions are **DENIED as moot**.

**DONE AND ORDERED** in the Southern District of Florida on April 26, 2024.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record